**Deborah M. FINLAY,
Plaintiff-Appellant,**

v.

**STORAGE TECHNOLOGY CORPORA-
TION, Defendant-Appellee.**

**No. 85CA0430.**

Colorado Court of Appeals,
Div. I.

Dec. 24, 1986.

Rehearing Denied Jan. 29, 1987.

Certiorari Granted (Finlay)
April 27, 1987.

Miller, Hale and Harrison, David B. Harrison, Boulder, for plaintiff-appellant.

The Law Firm of Thomas J. de Marino, Bonner E. Templeton, Denver, for defendant-appellee.

TURSI, Judge.

Plaintiff, Deborah M. Finlay, appeals the trial court's dismissal of her negligence action against defendant, Storage Technology Corporation (STC). She contends the trial court, as fact finder, erred in concluding STC was her statutory employer. We affirm.

Finlay was employed by Allied Maintenance Corporation, an independent contractor that provided janitorial services to STC. The contract between Allied Maintenance and STC required, *inter alia*, that maintenance provide STC with a base 956 cleaning hours per working day and to substantiate these hours by validated time records.

A ceiling tile fell on plaintiff while she was cleaning a bathroom at STC, severely injuring her right hand and arm. She received workmen's compensation benefits under coverage provided by Allied Maintenance. Finlay also filed common law negligence claims against STC. It answered by asserting the defense that it was Finlay's statutory employer pursuant to § 8–48–101, C.R.S. (1986 Repl.Vol. 3B) and that, therefore, her common law claim was barred by the Workmen's Compensation Act.

Trial was held to the court, and at the close of evidence, the trial court ruled the defense afforded by § 8–48–101 had been established. The trial court entered judgment in favor of STC, dismissing Finlay's complaint with prejudice. It ruled the janitorial services provided by Allied Maintenance were part of the total business enterprise of STC because those services were performed for STC on a routine and regular basis.

Plaintiff asserts the routine and regular factors emphasized by the trial court rendered the statutory employer test incomplete because it failed to take into account other circumstances in the case. She specifically contends the test failed to take into account the business of STC. We disagree.

The general test to determine statutory employer status pursuant to § 8–48–101 is whether the work contracted out is part of the regular business of the constructive employer. *Pioneer Construction Co. v. Davis*, 152 Colo. 121, 381 P.2d 22 (1963); *Melody Homes, Inc. v. Lay*, 44 Colo.App. 49, 610 P.2d 1081 (Colo.App. 1980). The underlying issue in this case is the definition of "regular business" in that test. Is it limited to the manufacturing

and marketing of computer peripheral equipment, or does it encompass the total business operation, including the regularly needed janitorial services? We are persuaded that the latter definition is correct.

Section 8–48–101 covers all of the contracted work that "is such part of his *regular business operation* as the statutory employer ordinarily would accomplish with his own employees." *Pioneer v. Davis, supra. See also Wagner v. Coors Energy Co.*, 685 P.2d 1380 (Colo.App.1984). This issue is to be determined by examining the nature and needs of the employer's business and is not affected by the fact the work is always accomplished by an independent contractor. *Melody Homes v. Lay, supra.*

In *Melody Homes*, security provided by an independent contractor was held a necessary part of the construction business even though it did not contribute directly to the construction of buildings. Security was held an integral part of the operation of a construction site.

Similarly, janitorial services do not contribute directly to production of computer peripheral equipment. However, the cleaning of the business premises is an integral part of the operation of STC's business facility. *See Moses v. Vulcan Material Co.*, 388 So.2d 117 (La.App.1980). We agree with the trial court that STC's contracting for janitorial services to be provided on a routine and regular basis indicates they are part of the regular business operation.

Furthermore, this broad definition of "regular business" is consistent with the purpose of the Workmen's Compensation Act. Its purpose is to provide monetary relief for workmen injured in the course of their employment regardless of fault. *Edwards v. Price*, 191 Colo. 46, 550 P.2d 856 (1976). The policy is to make the statutory employer ultimately responsible for workmen's compensation benefits arising out of injuries to employees of contractors and subcontractors when the immediate employer is uninsured or financially irresponsible. *Edwards v. Price, supra.*

Plaintiff relies heavily on *Wooten v. Youthcraft Manufacturing Co.*, 312 S.W.2d 1 (Mo.1958), which is factually similar to this case and in which the court allowed the tort action to be brought against the business that had contracted for janitorial services. However, we agree with the analysis of *Wooten* set out in 1C A Larson, *Workmen's Compensation Law* § 49.16(g) (1986). The *Wooten* decision is the product of an "upside-down" case, *i.e.*, the plaintiff there, as here, sought a determination that the action is not within the Workmen's Compensation Act. As stated by *Larson*, the *Wooten* ruling would seem "grotesquely illiberal" if an affirmative grant of workmen's compensation were at stake. The facts and posture of this case cannot justify ignoring the purposes of the Workmen's Compensation Act.

Citing *Campbell v. Black Mountain Spruce, Inc.*, 677 P.2d 379 (Colo.App.1983), plaintiff also suggests we add control by the constructive employer over the worker as another factor in the general test of a statutory employer. However, here the detailed provisions of the contract between STC and Allied Maintenance establish sufficient control in STC to sustain a finding that STC was the statutory employer of the injured employee.

Judgment affirmed.

PIERCE, J., concurs.

CRISWELL, J., dissents.

CRISWELL, Judge, dissenting.

I respectfully dissent.

In order for a business entity to be considered the statutory employer of a subcontractor or its employees, it must be "engaged in or conducting any business by leasing or contracting out any part or all of the work thereof...." Section 8–48–101(1), C.R.S. (1986 Repl.Vol. 3B).

Traditionally, the Colorado courts have drawn a distinction between subcontracted activities which are directly related to the alleged employer's primary business pur-

pose and other subcontracted activities which, while necessary to the accomplishment of that primary purpose, are, nevertheless, merely ancillary or incidental thereto. *Compare Campbell v. Black Mountain Spruce, Inc.,* 677 P.2d 379 (Colo. App.1983) (the work of planing of the lumber is a part of the business of producing finished lumber for sale) and *Melody Homes, Inc. v. Lay,* 44 Colo.App. 49, 610 P.2d 1081 (1980) (a security system is a "necessary part of the building process" and is "not incidental to the main objective of erecting residential structures") *with Pioneer Construction Co. v. Davis,* 152 Colo. 121, 381 P.2d 22 (1963) (the repair of vehicles used to haul materials is not a part of the highway construction business); *Meyer v. Lakewood Country Club,* 122 Colo. 110, 220 P.2d 371 (1950) (the repair of a private sewer system, although necessary for continued use of the facility, is not a part of a country club's "underlying business"); and *American Radiator Co. v. Franzen,* 81 Colo. 161, 254 P. 160 (1927) (the regular, bi-monthly washing of windows at a radiator factory is "not part of the business of manufacturing and selling heating systems").

In this case, the majority concedes that the janitorial services here involved, which did not differ in any significant way from the janitorial services deemed necessary for the operation of most businesses or business offices, did not "contribute directly" to the employer's primary business purpose of producing computer equipment.

This being so, plaintiff's activities were not, in my opinion, a part of the "work" of the defendant's "business" within the meaning of § 8–48–101(1), but were mere incidental or ancillary activities. *See American Radiator Co. v. Franzen, supra.*

Thus, it is unnecessary, in my view, to consider the extent to which the contract between defendant and plaintiff's real employer may have vested some control over plaintiff's work in defendant (it being concededly less than that required for a finding of a common law master-servant relationship), or the regularity with which such activities were to be performed, or defendant's past practice in using its own employees to perform such activities (it had not).

The trial court's conclusion, which the majority affirms, means that every business or business office making use of janitorial services on either a lease or contract basis shall be considered to be the statutory employer of the persons rendering such services. Since I am convinced that the legislative intent of § 8–48–101(1), as that intent has been judicially declared over the years, does not countenance such a result, I would reverse the trial court's judgment.